T.C. Memo. 2005-99


UNITED STATES TAX COURT


MERRY J. CHANDLER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6201-02L.                    Filed May 9, 2005.


        <u>Held</u>:  R's Appeals officer did not abuse his
discretion by sustaining a determination to proceed
with collection by levy of P's unpaid liabilities
following a telephonic conversation and an exchange of
correspondence with P.  P failed to prove that she
requested a face-to-face interview with the Appeals
officer during the course of the sec. 6330, I.R.C.,
hearing.


Merry J. Chandler, pro se.

<u>Ann M. Welhaf</u> and <u>Jeffrey E. Gold</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, Judge:  This case is before the Court to review a determination (the determination) made by respondent's Appeals Office (Appeals) that respondent may proceed to collect by levy petitioner's tax liabilities for her 1988, 1993, 1994, 1996, 1997, and 1998 taxable (calendar) years.  We review the determination pursuant to section 6330(d)(1).[1]  At the start of the trial in this case, respondent conceded that petitioner had paid in full her liability for 1993 and that respondent would not pursue a levy with respect to that year.  We accept that concession and will reflect it in our decision.  We therefore consider only respondent's proposed levy with respect to petitioner's unpaid liabilities for 1988, 1994, 1996, 1997, and 1998 (collectively, the unpaid liabilities).  Petitioner's sole argument on brief is that Appeals erred in making the determination because it failed to accord petitioner the face-to-face interview that she claims to have requested.  Because petitioner has failed to persuade us that she requested a face-to-face interview, we sustain the determination.[2]

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986.

[2]  During the trial in this case, petitioner also claimed that she had paid in full her liability for 1997 and that Appeals Officer McNichol (the individual in Appeals assigned to her case) had failed to allow her reasonable time to submit an amended offer in compromise.  Respondent denied both of those claims.  At

(continued...)

FINDINGS OF FACT

The parties filed a stipulation of facts, which, with accompanying exhibits, is incorporated herein by reference.

Petitioner resided in Bowie, Maryland, at the time the petition was filed.

On July 25, 2000, respondent issued to petitioner a Final Notice - Notice of Intent To Levy and Notice of Your Right to a Hearing (the notice), which sets forth the unpaid liabilities and describes respondent's intent to levy on petitioner's property to collect those liabilities. On August 7, 2000, petitioner timely filed a Request for a Collection Due Process Hearing (the request). On June 26, 2001, the request was assigned to Appeals Officer Francis McNichol, Jr. Mr. McNichol maintained a written

---

[2](...continued)
the conclusion of the trial, the Court instructed petitioner that she was required to file briefs. In particular, we instructed her that, as to any argument she wished to make, she should state in her brief the facts she wished the Court to find and then, based on those facts, argue her case to the Court. Petitioner filed both an opening brief and an answering brief. Although in her opening brief petitioner proposes facts and makes an argument with respect to the issue of whether she requested a face-to-face interview with Appeals Officer McNichols, she neither proposes facts nor makes any argument with respect to her claims that she paid in full her liability for 1997 or that Appeals Officer McNichols failed to allow her reasonable time to submit an amended offer in compromise. If an argument is not pursued on brief, we may conclude that it has been abandoned. E.g., Mendes v. Commissioner, 121 T.C. 308, 312-313 (2003). Because of our instruction to petitioner concerning her brief and her pursuit on brief exclusively of the face-to-face interview issue, we conclude that she has abandoned her other two claims, and we need not discuss them.

record of actions that he took with respect to the request that he considered to be significant, including correspondence and other contacts with petitioner and the final disposition of the request (the case activity record). The entry in the case activity record for October 12, 2001, chronicles a telephone conversation with petitioner. In pertinent part, it states: "Personal conference is not necessary per [petitioner]. Telephone discussion will be fine." The remainder of the entry discusses (1) an offer in compromise that petitioner claimed to have filed, but as to which Mr. McNichol could find no evidence in an Internal Revenue Service (IRS) database, and (2) Mr. McNichol's advice to petitioner that, before an offer in compromise could be considered, she must file her 2000 return.

Mr. McNichol's entry in the case activity record for December 4, 2001, states that petitioner filed her 2000 return and that the IRS received an offer in compromise from petitioner. The entry states that there were problems with the offer and that Mr. McNichol sent a letter to petitioner asking for revisions to the offer and for additional information; the entry further states that petitioner would be allowed 30 days to respond. An entry for January 2, 2002, states that there had been no word from petitioner and that Mr. McNichol had determined to sustain the collection (levy) action. A further entry for that date states that Mr. McNichol had prepared the case for closing.

Besides the entry on October 12, 2001, no entry in the case activity record references any discussion of a personal conference.

On February 19, 2002, Appeals issued to petitioner the determination.

OPINION

I. Introduction

If any person liable for Federal tax liability neglects or refuses to make payment within 10 days of notice and demand, the Commissioner is authorized to collect the tax by levy on that person's property. See sec. 6331(a). As a general rule, at least 30 days before taking such action, the Commissioner must provide the person with a written final notice of intent to levy that describes, among other things, the administrative appeals available to the person. See sec. 6331(d).

Upon request, the person is entitled to an administrative review hearing before Appeals (a collection due process hearing). Sec. 6330(b)(1). Appeals must offer the person an opportunity for a hearing, in person, at the Appeals Office closest to the person's residence. See sec. 301.6330-1(d)(2), Q&A-D7, Proced. & Admin. Regs. Nevertheless, a collection due process hearing "may, but is not required to, consist of a face-to-face meeting, one or more written or oral communications between an Appeals officer or employee and the taxpayer * * *, or some combination

thereof." Id., Q&A-D6, Proced. & Admin. Regs. The Appeals officer conducting the collection due process hearing must verify that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1). Section 6330(c) prescribes the relevant matters that a person may raise at the collection due process hearing, including spousal defenses, the appropriateness of respondent's proposed collection action, and possible alternative means of collection. A taxpayer may contest the existence or amount of the underlying tax liability at a collection due process hearing if the taxpayer did not receive a statutory notice of deficiency with respect to the underlying tax liability or did not otherwise have an opportunity to dispute that liability. Sec. 6330(c)(2)(B).

Following the collection due process hearing, the Appeals officer must determine whether the collection action is to proceed, taking into account the verification the Appeals officer has made, the issues raised by the taxpayer at the hearing, and whether the collection action, "balances the need for the efficient collection of taxes with the legitimate concern of the * * * [taxpayer] that any collection action be no more intrusive than necessary." Sec. 6330(c)(3). We have jurisdiction to review such determinations where we have jurisdiction over the type of tax involved in the case. Sec. 6330(d)(1)(A); see Iannone v. Commissioner, 122 T.C. 287, 290 (2004). Where the

underlying tax liability is properly at issue, we review the determination de novo. E.g., <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000). Where the underlying tax liability is not at issue, we review the determination for abuse of discretion. <u>Id.</u> at 182. Whether an abuse of discretion has occurred depends upon whether the exercise of discretion is without sound basis in fact or law. See <u>Ansley-Sheppard-Burgess Co. v. Commissioner</u>, 104 T.C. 367, 371 (1995).

II. <u>Arguments of the Parties</u>

Petitioner argues that, because petitioner was not granted a face-to-face interview, Mr. McNichol abused his discretion by determining that collection of the unpaid liabilities by levy was proper. Respondent answers that petitioner received an adequate hearing by telephone and exchange of correspondence and declined a face-to-face interview when, on October 12, 2001, such an interview was offered.

III. <u>Discussion</u>

We decide whether, before Appeals determined to proceed by levy with collection of the unpaid liabilities, Appeals Officer McNichol accorded petitioner a fair hearing, as required by section 6330(b)(1). Procedures for the conduct of collection due process hearings are set forth in section 301.6330-1(d), Proced. & Admin. Regs. As set forth above, section 301.6330-1(d), Q&A-D6 and D7, Proced. & Admin. Regs., provides that, although a

taxpayer must be offered a face-to-face interview, an acceptable hearing can consist of an exchange of correspondence or oral (telephonic) communications, or some combination of the two. See also Katz v. Commissioner, 115 T.C. 329, 334-338 (2000); Armstrong v. Commissioner, T.C. Memo. 2002-224; cf. Parker v. Commissioner, T.C. Memo. 2004-226. Entries made by Mr. McNichol in the case activity record show both an exchange of correspondence and telephone conversations. Based on the testimony of Mr. McNichol and the corroborating October 12, 2001, entry in the case activity record, we believe, and find, that, on that date, Mr. McNichol offered petitioner the opportunity for a face-to-face interview, which she declined. We further find that petitioner did not thereafter change her mind and request a face-to-face interview. Petitioner testified that, at some time, perhaps after she received a letter from Mr. McNichol dated December 4, 2001, she telephoned him and asked to meet with him, and he refused. Mr. McNichol testified that he recalled no such request; indeed, he could recall no conversations with petitioner after December 4, 2001. The case activity record shows no communication with petitioner after December 4, 2001. Petitioner's testimony was inexact as to dates, and she offers nothing to corroborate her testimony. While petitioner may have decided at some point after initially having been contacted by Mr. McNichol on October 12, 2001, and declining a face-to-face

interview, that, indeed, she did wish such an interview, we are unconvinced that she communicated that fact to Mr. McNichol.

IV.  Conclusion

As we understand her underlying claim, petitioner argues that she should be allowed to make (and Appeals should accept) an offer in compromise of the unpaid liabilities.  Petitioner attempted to make an offer in compromise, but Mr. McNichol found problems with the offer and asked petitioner to revise it and to provide him with additional information.  Mr. McNichol gave petitioner 30 days to do so.  At the end of 30 days, when petitioner had failed to make the revisions or provide the additional information, Mr. McNichol took steps to close petitioner's case and deny the request.  It took more than 6 weeks for Appeals to close the case and issue the determination. Despite the additional 6 weeks, petitioner never revised the offer or provided the additional information.  We do not think that Appeals abused its discretion in determining to proceed to collect the unpaid liabilities by levy.  See Roman v. Commissioner, T.C. Memo. 2004-20 (reasonable to issue adverse section 6330 determination when, after 6 weeks, taxpayer had

failed to submit information requested with respect to offer in compromise).

To reflect the foregoing,

<u>An appropriate decision</u>

<u>will be entered for respondent</u>.