151 T.C. No. 7

UNITED STATES TAX COURT

JAMES LOVELAND, JR., AND TINA C. LOVELAND, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10482-17L.                    Filed September 25, 2018.

R issued a notice of intent to levy to Ps. Ps submitted an offer-
in-compromise that included all requested financial information. R's
collections officer rejected the offer. Ps chose to forgo an Appeals
Office hearing so that they could continue negotiations over an
installment agreement. Those negotiations faltered.

Later, R filed a notice of Federal tax lien against Ps' property.
Ps requested a collection due process (CDP) hearing under I.R.C. sec.
6320. They requested that R consider the previously rejected offer-
in-compromise. Ps also requested an installment agreement and
requested relief due to economic hardship. Ps did not submit
financial information beyond what they had provided with the
previously rejected offer-in-compromise.

R declined to review the offer-in-compromise because Ps had
had a prior opportunity for a hearing. Without reviewing the
financial information that Ps had previously provided, R also declined

to review the installment agreement and the claim of economic hardship because Ps did not submit financial information.

Under sec. 301.6320-1(e)(1), Proced. & Admin. Regs., a "taxpayer may not raise an issue that was raised and considered at a previous CDP hearing under section 6330 or in any other previous administrative or judicial proceeding if the taxpayer participated meaningfully in such hearing or proceeding."

Held: A meeting with a collections officer is not a prior administrative proceeding under I.R.C. sec. 6330(c)(4)(A)(i) and sec. 301.6320-1(e)(1), Proced. & Admin. Regs.

Held, further, the Commissioner abused his discretion by failing to consider the proposed offer-in-compromise.

Held, further, the Commissioner abused his discretion by failing to consider the proposed installment agreement.

Held, further, the Commissioner abused his discretion by failing to consider the claim of economic hardship.

Held, further, we will remand this case to the Appeals Office for further consideration consistent with this Opinion.


James Loveland, Jr., and Tina C. Loveland, pro sese.

Samuel M. Warren, for respondent.

OPINION

BUCH, <u>Judge</u>: This collection case comes before the Court on the Commissioner's motion for summary judgment. In that motion the Commissioner argues that he is entitled to a judgment in his favor because Mr. and Mrs. Loveland did not submit the necessary financial information during their appeal to allow the Commissioner to consider their proposed installment agreement. The Lovelands contend that they submitted the necessary financial information. They also argue that the Commissioner did not consider the issues that they raised in their CDP hearing including an offer-in-compromise, an installment agreement, and economic hardship that reduced their ability to pay. We find that the Commissioner abused his discretion when he failed to consider the offer-in-compromise, the proposed installment agreement, and the claim of economic hardship.

<u>Background</u>

Mr. Loveland is a retired boilermaker, and Mrs. Loveland is a retired teacher. The last decade has held more than its share of challenges for the Lovelands. In the wake of the recent recession and housing crisis the Lovelands lost their home to foreclosure. At around the same time Mr. Loveland became

disabled as a result of a heart condition and had to leave the workforce.  Mrs. Loveland survived breast cancer.  During this tumultuous time the Lovelands stopped paying their taxes, resulting in outstanding tax liabilities for 2011, 2012, 2013, and 2014 totaling over $60,000.

In 2015 the Commissioner issued a notice of intent to levy, in response to which the Lovelands entered into negotiations with a collections officer.  As a part of those negotiations the Lovelands made an offer-in-compromise.  To submit the offer they completed a Form 433-A (OIC), Collection Information Statement for Wage Earners and Self-Employed Individuals, and appended a range of financial information including bank statements, pension and income documentation, and information about expenses and assets.  As a part of that offer-in-compromise, the Lovelands argued that their health problems and the foreclosure constituted special circumstances that limited their ability to pay.

The collections officer rejected the offer-in-compromise.  She found, on the basis of the financial information provided, that the Lovelands could pay the full amount and that the "special circumstances * * * [the Lovelands] raised * * * did not warrant a decision to accept * * * [the] offer."  The Lovelands initially appealed the decision.  They also wanted to pursue an installment agreement, but they were informed that a proposed installment agreement would not be

considered if they had a pending appeal of the rejected offer-in-compromise. As a result, the Lovelands withdrew their appeal so that they could continue negotiations with the collections officer.

As a part of those negotiations over the installment agreement, the Lovelands agreed to make voluntary payments of $800 each month. Mr. Loveland believed that the agreement constituted an accepted installment agreement. The Lovelands made at least two $800 payments.

While they were working on the installment agreement with the collections officer, the Lovelands were also working to borrow money, secured by an additional mortgage against a property they owned. They planned to use the proceeds from the loan to make an $11,500 payment to bring their tax liability below $50,000, which would qualify them for streamlined processing of their installment agreement. They submitted a loan application on October 21, 2016. On the same day the Commissioner filed a notice of Federal tax lien on the property. With the Federal tax lien having been filed, the Lovelands were unable to secure the loan and the settlement negotiations came to a halt.

The Commissioner issued a notice of Federal tax lien filing on October 25, 2016, and the Lovelands timely requested an Appeals Office hearing under section

6320.[1]  As part of that appeal, the Lovelands requested that the lien be released and argued that the lien "disrupted a mortgage refinance and has caused economic hardship."

On January 23, 2017, an Appeals officer sent the Lovelands a letter scheduling a hearing for March 2, 2017, and informing them that, for a collection alternative to be considered, they would need to submit a "completed Collection Information Statement Form 433-A for individuals" as well as supporting documents.

In response to the January 23, 2017, letter Mr. Loveland sent a letter requesting that the Appeals officer take "a second look at * * * [the] offer in compromise."  He attached several documents to the letter including the completed Form 433-A (OIC), the Lovelands' earlier letter requesting an appeal of the previous decision to reject the offer-in-compromise, and a Form 433-D, Installment Agreement, for $800 per month.  In the letter he stated:  "Paying any amount at this time will result in economic hardship or hasten my demise."  He called the Commissioner's attention to his health problems and specifically asked what would be classified as exceptional circumstances.

---

[1]All section references are to the Internal Revenue Code in effect for all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

The Appeals officer declined to review the offer-in-compromise and the proposed $800-per-month partial-pay installment agreement. In declining to review either the offer-in-compromise or the proposed installment agreement, the Appeals officer concluded that the offer-in-compromise was not properly appealed and that the Lovelands had not submitted the necessary financial information for the proposed partial-pay installment agreement.

Although the Appeals officer did not review the Lovelands' partial-pay installment agreement, she did calculate a monthly payment amount that would allow the Lovelands to fully pay the liability in 84 months. She determined on the basis of the amount the Lovelands owed that they would qualify for an 84-month installment agreement of $853 per month to fully discharge the liability.

On March 2, 2017, the Appeals officer conducted a hearing over the phone with Mr. Loveland. During the hearing the Appeals officer explained the hearing process to Mr. Loveland and asked whether Mr. Loveland had appealed the rejection of his offer-in-compromise. Mr. Loveland explained that he had not appealed because he had hoped to work out an installment agreement. Mr. Loveland informed the Appeals officer that the Lovelands had been working to secure a loan against their property and that the filing of the notice of Federal tax

lien had halted the loan application. He said that he wanted the lien removed so that he could continue the refinancing process.

The Appeals officer rejected the Lovelands' proposed $800-per-month partial-pay installment agreement. There is no evidence in the administrative record that the Appeals officer considered the financial information that the Lovelands had provided.

On April 7, 2017, the Appeals officer closed the Lovelands' appeal. On April 11, 2017, a notice of determination was sent to the Lovelands informing them of the Commissioner's determination and their right to appeal the decision to the Tax Court. The notice states that the Lovelands requested the withdrawal of the lien and an installment agreement. The notice also states that the Appeals officer did not consider their proposed installment agreement because the Lovelands "did not provide any financial information." Neither the notice of determination nor the case history notes discussed Mr. Loveland's medical condition or the effect of his disability on the Lovelands' ability to pay the tax liability.

On May 11, 2017, while residing in Michigan, the Lovelands filed a petition for redetermination of the decision to sustain the lien. In that petition the Lovelands stated that they disagreed with the determination because it caused

economic hardship, their "Due Process rights were violated", and their "[s]pecial circumstances [were] not truly considered."

On January 17, 2018, the Commissioner filed a motion for summary judgment, arguing that the Lovelands had not submitted the requested paperwork and financial information and that it was not an abuse of discretion to refuse to consider the offer-in-compromise or to refuse to withdraw the lien. In the motion for summary judgment the Commissioner stated that the declaration of the Appeals officer that conducted the hearing would be forthcoming.

Meanwhile the Court ordered the Lovelands to respond to the motion. They submitted a response stating that they "disagree with the Commissioner and the facts he has provided." They argued that they did submit financial information when they submitted the Form 433-A (OIC) and substantiating documents and that the lien has caused economic hardship. They also cited regulations that detail compromises to promote effective tax administration related to taxpayers with medical conditions or disabilities that limit their ability to pay.

It wasn't until after the Lovelands filed their response that the Commissioner submitted the declaration of the Appeals officer. The Court continued the case to give the Lovelands the opportunity to respond to the declaration.

In their response the Lovelands again argue that they provided financial information. Their response included the list of documents they submitted. The Lovelands also attached to the response copies of the Form 433-A (OIC) and the substantiating documents as well as the rejected loan application and their 2015 Form 1040, U.S. Individual Income Tax Return.

## Discussion

The question before the Court is whether the Commissioner is entitled to summary judgment in his favor as a matter of law. To answer that, we must first answer three questions: first, whether the Commissioner abused his discretion by failing to consider the Lovelands' proposed offer-in-compromise; second, whether the Commissioner abused his discretion by failing to consider the financial documents submitted with the Form 433-A (OIC) when considering the Lovelands' proposed installment agreement of $800 per month; and third, whether the Commissioner abused his discretion when he failed to consider whether the Lovelands' "special circumstances" and claim of economic hardship warranted an installment agreement or some other collection alternative as a compromise to promote effective tax administration as described in section 301.7122-1(c)(3)(i)(A), (B), or (C), Proced. & Admin. Regs.

I.       Summary Judgment

Under Rule 121(a), either party may move for summary judgment regarding all or any part of the legal issues in controversy.  The purpose of summary judgment is to expedite litigation and avoid unnecessary and expensive trials.  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  We may grant summary judgment only if there is no genuine dispute as to any material fact.  Rule 121(b); Naftel v. Commissioner, 85 T.C. 527, 529 (1985).  The party moving for summary judgment bears the burden of demonstrating that there is no genuine dispute as to any material fact.  Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).

In deciding whether to grant summary judgment, the Court must consider the factual materials and the inferences drawn from them in the light most favorable to the nonmoving party.  FPL Grp., Inc. v. Commissioner, 115 T.C. 554, 559 (2000).  When a motion for summary judgment is made and properly supported, the nonmoving party may not rest on mere allegations or denials but must set forth specific facts showing that there is a genuine dispute for trial.  Rule 121(d).

II.     Judicial Review of Appeals Determinations

In a CDP hearing, a taxpayer may raise any issue that is relevant to an unpaid tax, notice of Federal tax lien, or proposed levy, including challenges to the appropriateness of the collection action and offers of collection alternatives.  Secs. 6320(c), 6330(c)(2)(A).  In addition, a taxpayer may challenge the existence or amount of the underlying tax liability if the taxpayer did not have the opportunity to dispute the liability.  Sec. 6330(c)(2)(B).

When the underlying liability is not at issue, we review the Commissioner's collection determination for abuse of discretion.  Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  In reviewing for abuse of discretion we do not conduct an independent review of the collection alternatives.  We do not substitute our judgment for that of the Commissioner; we only ensure that the Commissioner's decision was not arbitrary, capricious, or without sound basis in fact or law.  See Klein v. Commissioner, 149 T.C. __, __ (slip op. at 12) (Oct. 3, 2017); Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

Generally, the Commissioner's determination must take three things into consideration:  (1) verification that the requirements of applicable law and administrative procedure have been met; (2) issues raised by the taxpayer; and (3)

whether any proposed collection action balances the need for efficient tax collection with the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary. Secs. 6320(c), 6330(c)(3); Lunsford v. Commissioner, 117 T.C. 183, 184 (2001). If the Commissioner "has not considered all relevant factors * * * the proper course, except in rare circumstances, is to remand * * * for additional investigation or explanation." Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985).

The Lovelands raised three issues. In their formal request for a hearing, the Lovelands sought to have the lien released and to have an $800-per-month partial-pay installment agreement considered. In his letter, Mr. Loveland requested that the Commissioner review the offer-in-compromise and explain the term "exceptional circumstance" with respect to offers-in-compromise. The Commissioner did not consider the installment agreement or the offer-in-compromise and made no mention of exceptional circumstances in the administrative record.

A.     Consideration of the Lien Release and Offer-in-Compromise

Section 7122(a) authorizes the Secretary to "compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice". Section 301.7122-1, Proced. & Admin. Regs., sets out the

grounds for compromise as well as the rules for evaluating proposed compromises. The sections governing CDP hearings provide that taxpayers may offer collection alternatives, "which may include * * * an offer-in-compromise." Secs. 6330(c)(2)(A)(iii), 6320(c). We are faced with a unique question here: whether negotiations with a collections officer constitute a previous administrative proceeding under section 6330(c)(4)(A)(i) and section 301.6320-1(e)(1), Proced. & Admin. Regs. The Lovelands made an offer-in-compromise in a separate collection proceeding that is not before us. Then, in the CDP hearing underlying this case, they renewed their offer-in-compromise. In response to a January 23, 2017, letter from the Commissioner, the Lovelands resubmitted their previously rejected offer-in-compromise along with their financial information.[2]

Section 6330(c)(4)(A)(i) precludes an issue from being raised if "the issue was raised and considered at a previous hearing under section 6320 or in any other previous administrative or judicial proceeding". But what constitutes a previous administrative proceeding? Section 301.6320-1(e)(1), Proced. & Admin. Regs., states that "the taxpayer may not raise an issue that was raised and considered at a previous CDP hearing under section 6330 or in any other previous administrative

---

[2]Contrary to the Lovelands' submission, the Commissioner stated that they "did not provide any financial information." The record is clear that they did.

or judicial proceeding if the taxpayer participated meaningfully in such hearing or proceeding." Whether a previously rejected collection alternative can be raised at a CDP hearing does not hinge on whether the taxpayer had a prior opportunity to challenge the rejection; it hinges on whether the rejected collection alternative was actually considered at a previous administrative or judicial proceeding. In other words it is not a question of whether there was a prior opportunity, but whether there was a prior proceeding.

Unlike the standard for review of an underlying liability, which hinges on the mere prior opportunity to challenge the liability, the standard for whether a collection issue can be raised at a CDP hearing is whether the issue was actually considered in a previous administrative or judicial proceeding. Sec. 301.6320-1(e)(1), Proced. & Admin. Regs. The Lovelands had a prior opportunity for a CDP hearing regarding their offer-in-compromise, but they never availed themselves of that opportunity. Because they only negotiated with the collections officer and did not have a CDP hearing regarding her rejection of their offer-in-compromise, they never had a prior hearing. Accordingly, they may request consideration of the same offer-in-compromise in a subsequent CDP hearing on the same tax for the same period.

The regulations under section 6320 confirm this analysis. In the question and answer section of the regulations the Commissioner specifically contemplates what can and cannot be raised at a CDP hearing under section 6320 when a taxpayer has received a prior notice under section 6330 for the same period and tax and did not request a CDP hearing regarding that notice.

> Q-E7. What issues may a taxpayer raise in a CDP hearing under section 6320 if the taxpayer previously received a notice under section 6330 with respect to the same tax and tax period and did not request a CDP hearing with respect to that notice?
>
> A-E7. The taxpayer may raise appropriate spousal defenses, challenges to the appropriateness of the NFTL filing, and offers of collection alternatives. The existence or amount of the underlying liability for any tax period specified in the CDP Notice may be challenged only if the taxpayer did not have a prior opportunity to dispute the tax liability. If the taxpayer previously received a CDP Notice under section 6330 with respect to the same tax and tax period and did not request a CDP hearing with respect to that earlier CDP Notice, the taxpayer had a prior opportunity to dispute the existence or amount of the underlying liability.

Sec. 301.6320-1(e)(3), Q&A-E7, Proced. & Admin. Regs. While this regulation is explicit that a prior opportunity to dispute the underlying liability in a CDP hearing precludes its consideration in a subsequent CDP hearing, the regulation is noticeably silent as to "spousal defenses, challenges to the appropriateness of the NFTL filing, and offers of collection alternatives." Id. This leaves open the opportunity for a taxpayer to raise a previously rejected collection alternative if

that taxpayer did not have a CDP hearing on the issue. In failing to consider the Lovelands' offer-in-compromise, the Commissioner abused his discretion.

B.    Consideration of the Installment Agreement

Section 6159(a) gives the Secretary discretionary authority "to enter into written agreements with any taxpayer under which such taxpayer is allowed to make payment on any tax in installment payments if the Secretary determines that such agreement will facilitate full or partial collection of such liability." The Commissioner has the discretion to accept or reject an installment agreement proposed by a taxpayer. See sec. 301.6159-1(c)(1)(i), Proced. & Admin. Regs. We review the Commissioner's rejection of an installment agreement for abuse of discretion. See Orum v. Commissioner, 123 T.C. 1, 12-13 (2004), aff'd, 412 F.3d 819 (7th Cir. 2005). As with an offer-in-compromise, we do not conduct an independent review of what would be an acceptable installment agreement, nor do we substitute our judgment for that of the Appeals officer. See Murphy v. Commissioner, 125 T.C. at 320.

The Lovelands submitted a proposal for an $800-per-month partial-pay installment agreement in anticipation of their CDP hearing and explicitly asked the Commissioner to consider their proposal. The Commissioner refused to review the installment agreement proposal because the Lovelands "did not provide any

financial information." The Lovelands argue that they provided financial information in the form of their completed Form 433-A (OIC).

We have previously held that it is not an abuse of discretion for the Appeals officer to reject a collection alternative when the taxpayer does not provide the financial information necessary to evaluate the merits of the collection alternative. Chandler v. Commissioner, T.C. Memo. 2005-99, 89 T.C.M. (CCH) 1133, 1135 (2005). The Commissioner requested that the Lovelands provide a completed Form 433-A, Collection Information Statement, to have their proposed installment agreement considered. The question before us now is whether the Lovelands' Form 433-A (OIC) and accompanying documents satisfied that request.

We have previously held that it is not an abuse of discretion to decline to consider a collection alternative when the Commissioner has requested but not received updated financial information when that information is out of date. Long v. Commissioner, T.C. Memo. 2010-7. And Internal Revenue Manual pt. 5.8.5.3(2) (Sept. 30, 2013) states that, if financial information becomes older than 12 months and it appears that significant changes have occurred, a request for updated information may be appropriate. But here, the administrative record does not indicate that the Commissioner ever considered the financial information, the age of that information, or whether significant changes had occurred. The stated

reason for the Commissioner's rejection of the Lovelands' proposed installment agreement was that the Lovelands did not provide financial information. But they did. The Commissioner abused his discretion in failing to consider that information.

C.      Consideration of Economic Hardship

Throughout the negotiations within the administrative process and this Court proceeding, the Lovelands have argued that their poor health affects their ability to pay. While the Lovelands did not raise the issue of a compromise using the words "effective tax administration" until this Court proceeding, they argued that collection of the full liability would cause economic hardship. In their attachments to the offer-in-compromise the Lovelands explicitly argued that paying the liability in full would cause economic hardship.

There is no evidence in the record showing that the Commissioner considered the Lovelands' claim of economic hardship or whether a compromise to promote effective tax administration was appropriate. While the Commissioner noted the Lovelands' economic hardship argument in the administrative record and the notice of determination, he never evaluated that claim.

It is an abuse of discretion for the Commissioner to neglect to consider all of the issues raised by a taxpayer. Secs. 6320(c), 6330(c)(3). The Lovelands

explicitly raised the issue of economic hardship, and the Commissioner abused his discretion in failing to consider it.

## Conclusion

On the basis of the administrative record, the Commissioner abused his discretion when he refused to consider the Lovelands' offer-in-compromise, refused to consider their installment agreement, and refused to consider whether full payment of the liability would cause economic hardship.  We will remand this case to the Appeals Office for further consideration consistent with this Opinion.

An appropriate order will be issued.